## Suter *versus* Sheeler.

1. Acknowledgments of a debt to take it out of the statute of limitations, ought to be so full and precise as to enable a Court to apply them exactly as the party making them intended they should be applied.

2. If the evidence prove no recognition of an amount—or of the instrument of indebtedness—or of other circumstances of identification, the *debt in suit* cannot be regarded as revived.

3. In an action for 14 years of labor, where it was shown that the plaintiff had worked part of the time for the defendant, and part of it for the defendant's son, and acknowledgments 'and promises of the defendant were relied on to take the case out of the statute, they were held insufficient because they did not particularly relate to the *whole* claim in suit, and there was no evidence tending to show to what part of it they had reference.

ERROR to the Common Pleas of *Westmoreland county*.

This was an action of *assumpsit*, brought in January, 1852, by John Sheeler *v.* Wm. Suter, administrator of the estate of Daniel Tarr, deceased. The plaintiff claimed to recover for services rendered to Daniel Tarr, with whom he went to live in 1828 or 1829, and continued to live with him till the summer or fall of 1845, when he left. It was alleged that he had an agreement with Tarr for wages, at $7 or $8 per month; and this suit was brought to recover for the whole period of service. The plea was *non assumpsit, non assumpsit infra sex annos*, and payment with leave.

On the part of the *defendant* it was alleged that the plaintiff had no family, that he had made his home with the intestate, and worked when he pleased; that he was treated and provided for as a member of the family, and that he was not working under any contract for wages, at least for several years before he left. Further, that he left the service of the intestate in August, 1845, and as this suit was not brought till January, 1852, the statute applied to it.

It appeared that Daniel Tarr died in January, 1852.

On part of the *plaintiff*, it was alleged that such an acknowledgment of the debt had been made by the intestate as prevented the operation of the statute; and to prove this, the testimony of *Daniel Tarr* was relied on. For the more material part of his testimony, see the opinion in this case.

On the part of the *defendant* points were proposed, the *third* of which was to the effect that there is no evidence of such an acknowledgment of the debt within six years as will take the case out of the operation of the statute of limitations.

To this the Court charged, that, "The declarations of Daniel Tarr, senior, to Sheeler, shown by Daniel Tarr, junior, if he is

[Suter v. Sheeler.]

believed, would be a sufficiently distinct acknowledgment. He spoke expressly of the pay for his labor."

The Court further instructed the jury, that if they found for the plaintiff, the verdict should be for the wages for services from 1831 till 1845, viz. for fourteen years, allowing *interest*, if they saw fit, on each year, after deducting any annual amount paid in the way of clothing.

March 1, 1853, verdict for plaintiff for $2079.75.

It was, *inter alia*, assigned for error, 3. That the Court erred in the answer to the third point; 4. In the charge as to interest.

*Stokes* and *Foster*, for plaintiff in error.—It was said to be settled, that a promise to pay, or such an acknowledgment from which the law will infer a promise, must be clear, unequivocal, and distinct, both in its extent and form, so as to leave no room for doubt or hesitation : Harbold's Executors *v.* Kuntz, 4 *Harris* 210 ; 6 *W. & Ser.* 213, Gilkyson *v.* Larue ; 3 *Barr* 418 ; 6 *Watts* 220 ; 10 *Id.* 172 ; 8 *Barr* 258. The witness spoke of no amount mentioned by Daniel Tarr, nor referred to any admission by him at the time from which the amount could certainly be fixed. Nothing was said about the price or the length of service to be paid for; whether under a contract specific in its terms, or what the services were worth. It was alleged that other witnesses proved that at the time the plaintiff entered into the service of the intestate, there was a contract to pay $7 or $8 per month; but it was submitted whether this would avail if the testator made no reference to it at the time of the alleged acknowledgment.

*Cowan*, for defendant in error.—In favor of the sufficiency of the acknowledgment, reference was made to the acknowledgment in the case of Hazelbaker *v.* Reeves, 9 *Barr* 258, and same case in 2 *Jones* 264; and in the case of Davis *v.* Steiner, 2 *Harris* 275. It was said that the expressions of Tarr showed that he thought the claim was of an amount almost equal to the value of his estate, so that if exacted immediately it would ruin him.

The opinion of the Court was delivered by

WOODWARD, J.—Assuming it as a settled doctrine that the acknowledgment of a debt to take it out of the statute of limitation, must be so distinct and palpable in its extent and form as to preclude hesitation, it would be, perhaps, a fruitless task to attempt to reconcile the cases of Hazelbaker *v.* Reeves, 2 *Jones* 264, and Davis *v.* Steiner, 2 *Harris* 275, with Farley *v.* Kustenbader, 3 *Barr* 418, and Harbold's Exr. *v.* Kuntz, 4 *Harris* 210. If obliged to choose between them, our preference would incline to the reasoning adopted in the last two above mentioned, as was indicated

[Suter *v.* Sheeler.]

by our opinion in Huff *v.* Richardson, 7 *Harris* 388. The statute bars the remedy. Whether founded on presumption of payment, supposed loss of evidence, or the policy that would suppress litigation and promote repose, it is an express legislative offer to the debtor of means, not to extinguish his debt more than six years old, but to defeat any action for its recovery. But the offer must be accepted. The statute is a bar only when it is pleaded, and as it may be waived in pleading, so it may be by matter *in pais*. Inasmuch, however, as the indemnity offered to the debtor is based on a regard for individual and particular justice, and on considerations of public policy which long experience has sanctioned, the evidence of waiver ought to be clear on every point essential to constitute liability. Acknowledgments of a debt which are consistent with a promise to pay, are said to amount to a new promise; but that this is not true, is proved by our always suing on the original contract, and never on the new promise. Still, however, whether they be regarded as evidence of a *new* promise, or only as a waiver of the statutory defence against the *old one*, they manifestly ought to be so full and precise, as to enable a Court to apply them exactly as the party making them intended they should be applied. When a debtor waives the benefits of the statute in pleading, there is no doubt about his intention; but when he pleads it, and it is sought to strip him of its protection by *evidence*, let it be shown when and where he surrendered it, and that the surrender had respect to *the very claim now in suit:* see an essay on the Statute of Limitations, in *Law Jour.*, July, 1848, p. 63.

If the evidence prove no recognition of an amount, or of the instrument of indebtedness, or of other circumstances of identification, how can a Court and jury, sitting to administer *justice*, be expected to apply it to the specific debt in suit?

This case illustrates the difficulty. The plaintiff came to live with the intestate of the defendant, Daniel Tarr, in 1831, and it was proved that Tarr told him he would give him seven or eight dollars a month, as long as he would stay with him. Sheeler stayed till after harvest, in 1845, when he left and went to live with Christian Bean, in the neighborhood. Tarr died in January, 1852, more than six years after Sheeler left him, and yet this suit was not brought until after his death. On these facts, the statute of limitations was an absolute bar, and that salutary law never answers a better purpose than when interposed to protect dead men's estates from rapacious and stale claims that would never have been asserted in the face of the living debtor. But one witness, Daniel Tarr, a grandson of the decedent, proves a conversation between Sheeler and old Mr. Tarr, a few months before his death, which is relied on to take the case out of the statute. Sheeler had come there to see Mrs. Tarr, who was sick, and having

made his visit to her, the witness says: "Daniel Tarr and Sheeler were out at the corner of the house; I was a couple of steps off. Tarr asked Sheeler to come back and live with him; Sheeler said he would see about it, probably he would come.   Old man said, I know, John, the people are persuading you to sue me; you know, John, I have always promised to pay you.   Old man said again, he knew the people were trying to get him to sue; that he always promised to pay him for his labor.   He said he was not able to pay him then; he did not expect to be here long, and he would leave enough after his death to pay him.   He said to Sheeler, he had been a good slave to him; he said if Sheeler sued him it would play hell with him."

Now, if it were not for certain qualifying circumstances hereafter to be noticed, I agree that, according to some of the adjudged cases, this evidence might be applied to the contract of hiring of 1831, and be held a waiver of the statute as to that contract which is the cause of action on the record.   But let us look at the qualifying circumstances.   It was in evidence that Colin Tarr, a married son of Daniel Tarr, lived on the farm with his father while Sheeler worked there; that his boys and Sheeler worked together; that in 1835 Colin owned all the horses and sold them to his father in 1839; that he put out thirty acres on Regan's farm one year, and that his son Daniel and Sheeler did the work; that he took several school-houses to build in Westmoreland and Fayette counties, about 1838, and worked a summer and winter at them, and that Sheeler worked with him; that in 1841 or 1842, when Sheeler left for a week, in consequence of sickness, Colin went and brought him back.   Colin died on the place in October, 1842, and his family continued to reside there after his death.

Thus it was shown, that for a considerable portion of the fourteen years, for the labor of which this suit was brought, the plaintiff was not in the service of the intestate, but of his son, Colin Tarr.   Did the acknowledgments of old Daniel Tarr, as proved by his disappointed grandson, relate to the time Sheeler had worked for both him and Colin, or only to the time he had wrought for himself?   He acknowledged his indebtedness, but under the evidence it would be gross injustice to measure that by the whole fourteen years, because part of that time had been given to Colin. But how much?   The evidence does not answer.   What the relations between the three men were, and how much labor at seven or eight dollars a month was performed for the old man, and how much for Colin, at that or some other agreed rate, are points on which the *acknowledgments* throw not a ray of light, and which are unascertained by all the evidence in the cause.   It was not the purpose of the acknowledgments to *enlarge* the liability, but only to *revive* it.   Its *extent* was doubtless well understood by the par-

[Suter *v.* Sheeler.]

ties, but it was not shown on the trial, and therefore the plaintiff ought not to have recovered. Judging from its amount ($2079.75), the verdict must have been for the whole period, with interest superadded; and that in a case where the only thing clear as to the *extent* of the party's indebtedness is, that it did *not* cover the whole period.

The case then, upon all the evidence, left the statute of limitations in full force, that is, to put it more clearly, the plaintiff having failed to prove that the defendant's intestate had acknowledged the *debt sued,* the statute barred the action, and the Court ought so to have instructed the jury.

The judgment is reversed and a *venire de novo* awarded.